ROBERTSON, Justice.
Upon remand of this Case to the Chancery Court of Harrison County for a trial on the issue of damages alone, the Chancellor, after a full hearing, determined that the remaining Complainants had been damaged, but that the proof was not sufficient to show with reasonable certainty either the extent or amount of the damages suffered, and the judgment of the Court was that the Complainants recover $5,000 damages, this being the amount of the bond deposited by Defendants as a signatory to the Articles of Association.
The Complainants appeal from this judgment and vigorously contend that the damages awarded are completely and totally inadequate and are not in accordance with the overwhelming weight of the evidence. They assign also as error that “The Court below, contrary to law, based his opinion on the theory that the damages proved were speculations and incapable of proof.”
It was admitted by the two remaining Complainants who sought to prove damages that they operated at a profit for the period in question, that is, from January 1, 1952, to May 15, 1957. So any damages suffered would be profits that they would reasonably have made if Defendants, Gulf Naval Stores Company, had not breached the contract, contained in the Articles of Association.
22 Am.Jur.2d, Damages, Section 171 at 242 (1965), has this to say on the proof required to determine the amount of “lost profits
“There are, however, three general principles which the courts apply to determine when lost profits will be allowed as compensation: (1) In both tort and contract actions, lost profits will be allowed only if their loss is proved with a reasonable degree of certainty. (2) In both contract and tort actions, lost profits will be allowed only if the court is satisfied that the wrongful act of the defendant caused the loss of profits. (3) In contract actions, lost profits will be allowed only if the profits were reasonably within the contemplation of the defaulting party at the time the contract was entered into." (Emphasis added.)
Testifying for Complainants were:
Gerald L. Reasor, an officer of Southern Naval Stores Division of Leach Brothers, Inc., a party in interest;
Fred Kressman, General Manager of Continental Turpentine and Rosin Corporation, a party in interest;
Ernest E. Holdman, Vice-President of Newport Industries, Inc., until his retirement, and a prime mover in forming Wood Naval Stores Export Association, the original Complainant, testifying as an expert witness ;
Eugene Murphey, Secretary of Wood Naval Stores Association, the original Complainant herein;
Frank Dryfus, President of Dixie Pine Products Company, Inc., a party in interest.
The Defendants offered only one witness, Louis Latimer, a partner in Gulf Naval Stores Company, a party in interest.
Chancellor Hewes after a full trial took this matter under advisement and later ren *259 dered a written opinion wherein he correctly summarized the testimony of the above-named witnesses, as follows:
“Mr. Reasor testified that because of Defendant’s selling outside the Wood Naval Stores Export Association, that the Association suffered loss or damage in the amount of $944,300.00, of which amount the sum of $307,385.00 was loss or damage to Southern Naval Stores Division of Leach Brothers, Inc. He stated that this loss is calculated at $1.25 per CWT estimated on the amount of additional business the Association would have gotten if Defendant had not sold F. F. Wood Rosin in export trade outside the association agreement.
Mr. Reasor further testified that: Prices of F. F. Wood Rosin fluctuate and that there are multiple factors which cause price fluctuations;
That he would not say that all of the cause of price reduction is attributable to Defendants’ selling outside the Association ; but
That after Defendants’ violation of the association agreement by selling outside the association, the export market went down and Defendants’ violation contributed very substantially to same; and
That the economic condition in America and in foreign nations was a contributing factor to the reduction in prices, and consequently to the claimed losses — that the foreign markets fluctuated and that sometimes there were no buyers in foreign nations — and that there was not a straight line decline in foreign markets.
Mr. Reasor also testified that Newport Industries Inc. had the basic right to fix the price of F. F. Wood Rosin sold for export — but this is at variance with paragraph 4 of the agreement or contract between said Complainant Association and Newport Industries Inc. being Exhibit B to the Bill of Complaint, and Exhibit B in Evidence at the former hearing, on the merits.
He further testified that Newport Industries, Inc. had the right to sell F. F. Wood Rosin in export at prices lower than the Complainant Association’s price —and this conforms to paragraph 11 of the same said contract, being Exhibit B to the Bill of Complaint and Exhibit B in Evidence at the former hearing on the merits.
He further stated that his testimony relates to business he did not get but would have gotten except for Defendants’ violation of the Association agreement.
Mr. Reasor also testified that some foreign buyers of F. F. Wood Rosin bought on a speculative basis — that various factors affected the market and also to the effect that numerous export agencies were selling wood rosin in export trade. He testified that Complainants asked Newport Industries, Inc. to ask other export agencies to cooperate and place orders with Newport Industries, Inc., but that he does not know whether all other exporters booked orders through Newport Industries, Inc. He testified that when Defendants stopped shipping (selling) through the Association, that the quotas were divided four ways instead of five ways.
Mr. Reasor stated that his company made a profit every year during the period 1952-1957.
Mr. Kressman testified that because of Defendants’ selling outside of the Wood Naval Stores Export Association, the Association suffered loss or damage in the approximate amount of $900,000.00, of which amount the sum of $167,300.00 was loss or damage to Continental Turpentine and Rosin Corporation. He testified that this loss is calculated at $1.18 per CWT based on his estimate of the additional business the Association would have gotten if Defendant had not sold *260 F. F. Wood Rosin in Export Trade outside the Association agreement.
He also testified that the quota of Continental Turpentine and Rosin Corporation in the (original) Complainant Association was 15% of the amount sold in export but was increased to 18% when Alabama Naval Stores Company withdrew from the said Association Agreement and that ultimately his company’s (Continental) quota was increased to 40% of the Association’s export orders.
Mr. Kressman testified that he cannot measure accurately the damage (to the Complainant Association, and its members) resulting from Defendant’s selling F. F. Wood Rosin in export outside of the Association.
He also testified that the figures he gave are not entirely correct — that all expenses are not included.
He stated that at times some association members could not fill their quotas —that Dixie Pine Products Company, Inc. and Delta Pine Products Corporation refrained from taking their quota or allocation from the Complainant Association — and that Southern Naval Stores Division of Leach Brothers, Inc. and Continental Turpentine and Rosin Corporation filled those quotas — or that portion which Dixie and Delta did not take.
He testified that Newport Industries, Inc. had 3 plants in production — and sold in export trade.
He stated that Exhibit 10 in evidence is constituted of figures from his books and estimates of what it would cost to produce additional rosin.
Pie testified that ultimately two members of the Complainant Association (Southern and Continental) shipped 80% of the Association’s entire quota.
He testified that his company (Continental) operated at a profit throughout the period of 1952-1957, the period of time involved in this cause.
Mr. Kressman testified that Complainant Association’s productive capacity of F. F. Wood Rosin was approximately 20% of the productive capacity of the United States (plants). R.856, latest appeal record, Supreme Court Cause No. 42,319.
Mr. Frank Dreyfuss, President of Dixie Pine Products Company, Inc., testified that his company preferred to produce and sell pale rosins, rather than F. F. Wood Rosins. He stated that the percentages of allotment to members of Complainant Association increased when Alabama Naval Stores Company withdrew from Complainant Association— and that ultimately two members of said Association shipped 80% of said Association’s entire allotment or quota.
Mr. Ernest E. Holdman, one of the prime movers in forming the Complainant Association, and put on the stand as an expert witness by Complainants testified that:
Crosby — not a member of Complainant Association — was in the export market of F. F. Wood Rosin to a limited extent but that this did not bother the market.
He further testified that the quantity of F. F. Wood Rosin sold by Defendants outside the Complainant Association would be material and would break any set price — but he also testified that there is no way of measuring the extent of such effect.
He also testified that Newport Industries, Inc. — which had the right to sell F. F. Wood Rosin in export trade at any price it desires — operated 4 or 5 plants during the subject period of 1952-1957, and operated such plants on a 24 hour basis, except for breakdowns or vacations.
*261 He testified that if foreign producers produced more F. F. Wood Rosin than needed, this would affect the foreign market — but that F. F. Wood Rosin continued to sell in fairly good quantities.
Mr. Holdman testified that the production of F. F. Wood Rosin by members of the Complainant Association exported from the United States was not less than 60% of the entire world market, and that this was true during the period of 1952-1957.
Defendants offered but one witness, Mr. Louis Latimer, of Gulf Naval Stores Company, a party in interest.
He testified that several times he lost business to Crosby — a competitor who was not a member of Complainant Association. He further testified that Defendants operated their plant 7 days a week.
Exhibit 6 in evidence, pages 807-808, latest appeal record, shows that on the former hearing of this cause the witness Latimer then testified that Defendants had good connections and have a good product, that their product is well known and that they had a good salesman- — this being in the scope of testimony as to the various factors bearing on the sale of naval stores.”
After thus summarizing the testimony of the witnesses, Chancellor Hewes proceeded to make his findings of fact and to apply the law to the facts, as follows:
“Based on the overall record in this cause the court must now determine whether or not Complainants have proved by a preponderance of the evidence:
1. That Defendant’s admitted violation of the Wood Naval Stores Association Agreement was the direct and proximate cause of damage to Complainants; and,
2. If so, whether or not Complainants have established by adequate proof the extent or amount of the claimed damages. It is the trial court’s view that a fair analysis of the record in this cause shows that:
A preponderance of the evidence establishes that Defendant’s violation of the Complainant Association agreement by selling F. F. Wood Rosin in foreign export trade outside of the Association was a direct contributing cause adversely affecting the foreign market in which Complainants were selling F. F. Wood Rosin; and a preponderance of the evidence equally establishes that there were various other factors which also (adversely) affected the same said foreign market during the same period of 1952-1957, the period of time involved in this litigation; and
That Complainants have failed to meet the required burden of proof of establishing the extent or amount of the claimed damages, and,
That a preponderance of the evidence shows that the extent of the effect of Defendants selling F. F. Wood Rosin outside the Complainant Association during the period 1952-1957 cannot be accurately measured or determined.
The testimony of the witnesses Reasor, Kressman and Holdman establish that Defendant’s selling outside the Complainant Association was a direct contributing cause adversely affecting the price of F. F. Wood Rosin in foreign export trade during the period of 1952-1957. However, the testimony of these same witnesses proves that there were other factors which also contributed to the adverse effect on prices of F. F. Wood Rosin in the same period of time.
The witness, Reasor, stated he would not say that all of the cause of the price reduction of F. F. Wood Rosin is-attributable to Defendant’s selling outside the Complainant Association. The witnesses, Kressman and Holdman, testified that various factors affected the foreign market of F. F. Wood Rosin— *262 and Mr. Holdman testified that the prices of Rosins have never been stable.
The court bases its findings, that Complainants have failed to establish by adequate proof the extent or amount of the claimed damages, not only on the testimony of Complainants’ witnesses, Kressman and Holdman, that there is no way to measure the extent of the effect of Defendant’s selling F. F. Wood Rosin in export trade outside Complainant Association — but also on the bases that the theory of the measure of damages is founded on an untenable assumption— namely;
That except for Defendant’s breach of
the Complainant Association agreement, or contract, that the Complainant Association would have sold the same quantity of F. F. Wood Rosin that Defendants sold outside the association — this is illogical and is against reasonable probability for the reasons that the record shows that Defendants sold F. F. Wood Rosin in foreign export trade at a lower price than Complainants were selling it. Also, testimony shows that some buyers in the foreign market speculated in their purchases of F. F. Wood Rosin and that various factors affect the fluctuation of the prices of this commodity.
Further, Complaintants, chiefly the witnesses, Reasor and Kressman, each base their claim to damages on a fixed rate of loss or damage per CWT — thus not taking into consideration even the normal fluctuations in the market. On this point, Mr. Justice Rodgers, rendering the decision of the Supreme Court of Mississippi in Supreme Court Cause No. 42,-319, on June 11, 1962, states, at the top of page 17 of said decision, or opinion, attached to the Court’s Mandate, the following :
‘The evidence in this case shows that the export prices for F. F. Wood rosin fluctuated, and the damages to the Association for the breach of the contract would have been different sums at different times . . . ’
Further, the proof fails to show the loss of any specific or definite accounts or particular customers by Complainant Association to Defendants during the subject period of time. Also, the expert witness, Holdman, put on the stand by Complainants testified that F. F. Wood Rosin continued to sell in fairly good quantities.
Accordingly, the trial court finds that Complainants have failed to prove the extent or amount of the claimed damages — that the testimony of their own witnesses is clearly to the effect that the effect of Defendant’s selling F. F. Wood Rosin outside the Association cannot be (fairly or accurately) measured. Thus, such proof of damage offered by Complainants is general and speculative, and will not support an award of damages, within the accepted and established rules of law. That such testimony is admittedly speculative, see R. 867 and 868, of the latest appeal record, Supreme Court Cause No. 42,319.
However, there remains the matter of adjusting the equities in this cause.
Defendants admitted the breach of the Complainant Association agreement. The proof reasonably shows that this breach of contract by Defendants was a contributing cause to depressing the foreign export market for F. F. Wood Rosin, resulting in (some) loss to Complainants — but that the extent of this loss, as stated above, cannot be fairly or accurately determined.
What then are the equities to be fairly considered here.
Paragraph 16 of the Articles of Association of the Wood Naval Stores Export Association — to which Gulf Naval Stores Company was a party signatory — and being Exhibit B in evidence (in previous hearing) — provided that each party to *263 the said association should deposit and maintain on deposit with said Complainant Association the sum of $5,000.00 ‘. . to insure his faithful performance of all provisions of this Agreement, . . Thus this deposit was in the nature of a performance bond.
Thus, in a sense, this is an amount of recovery which the parties themselves fixed for the failure of any member of the Complainant Association to faithfully perform the said agreement.
As already stated, the record shows:
That Defendants did not faithfully perform the said agreement during some substantial portion of the contract period;
That Defendant’s breach of said Association agreement was a directly contributing factor in depressing the foreign market for F. F. Wood Rosin.
That the extent of the effect of Defendant’s selling F. F. Wood Rosin outside the Complainant Association cannot be (accurately) measured — the expert witness offered by Complainants testifying that there is no way to measure it;
That two of the principal witnesses for Complainants testified that their companies — members of Complainant Association — operated at a profit throughout the subject period of 1952-1957, and the record of this hearing fails to disclose that any member of Complainant Association operated at an actual deficit or loss; The contract of Complainants with Newport Industries, Inc. — paragraph 14 thereof contained a mutual 60 day cancellation right, which it is reasonable to conclude would have been prudently availed of by Complainants if, Defendant’s selling outside the Complainant Association had been seriously damaging to Complainants.
That the expert witness, Holdman, testified that the sales of F. F. Wood Rosin continued in fairly good quantities.
It is to be noted here that by former decree of this court Complainants have been awarded judgment against Defendants in the amount of $7,110.00, being part of an awarded recovery of $12,400.00, after allowing certain credits to Defendants in the sum of $5,290.00 — said recovery by Complainants being based on Defendant’s contractual obligation to pay the Complainant Association a monthly assessment of $200.00 for 62 months. While Defendants were ordered and obligated to pay said monthly assessment, the fact remains that Complainants benefited from same, and Defendants did not. Finally, based on the above stated findings, the trial court now holds that Complainants are equitably entitled to recover the (additional) sum of $5,000.00 from Defendants. Costs will be assessed against Defendants.”
After carefully reading and studying the Record and the excellent briefs of counsel, we are unable to say that the Chancellor was manifestly wrong in his findings of fact and conclusions of law. In fact, we think that the Chancellor correctly applied the law to the facts in this particular case, and that he reached about the only conclusion that he could logically reach. His decision is supported by a preponderance of the evidence.
The judgment of the lower Court is, therefore, affirmed.
Affirmed.
ETHRIDGE, C. J., a<nd RODGERS, PATTERSON and SMITH, JJ., concur.